DeGenaro, Judge,
dissenting.
{¶ 26} The majority and I differ on how to interpret Fisher v. Hasenjager, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546; Surgenavic v. Surgenavic, 7th Dist. No. 08 MA 29, 2009-Ohio-1028, 2009 WL 582575; and R.C. 3109.04. As I read the statute and Fisher, there is a three-part analysis a trial court must engage in before modifying the allocation of parental rights and responsibilities where the original decree making the allocation designated both parents as residential parent and incorporated a shared-parenting plan rather than a visitation plan: first, a change in circumstances must be found pursuant to R.C. 3109.04(E)(1)(a); second, it must be determined whether it is in the best interest of the children) to terminate the shared-parenting pursuant to (E)(2)(c); third, *711 pursuant to (E)(2)(d), modification of the decree with respect to the designation of the residential parent must be made pursuant to the best-interest factors contained in (F)(1) in accordance with the procedures in (A), (B) and (C). Further, this court’s decision in Surgenavic succinctly and correctly followed Fisher, as did In re Illig, 3rd Dist. No. 13-08-26, 2009-Ohio-916, 2009 WL 500600. For these reasons, I would affirm the trial court and certify a conflict to the Ohio Supreme Court.
{¶ 27} The Supreme Court in Fisher was split in its interpretation of R.C. 3109.04. That appellate districts in this state, as well this district internally, differ in how to interpret Fisher and R.C. 3109.04 in the context of modifying an original decree designating parental rights and responsibilities that incorporates a shared-parenting plan, rather than the more common circumstance of a visitation plan, makes the cumbersome nature of the statute self-evident. It also makes the case for statutes to be crafted in such a fashion that they address single issues. That said, review of the trial court’s decision must begin with a review of R.C. 3109.04.
{¶ 28} Principles of statutory construction dictate that courts determine legislative intent by analyzing the purpose of the statute and the language of the statute itself, and in doing so reading language regarding the same subject in pari materia. Fisher, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, at ¶ 20. Thus, the entirety of R.C. 3109.04 must be discussed. R.C. 3109.04 governs the initial allocation of parental rights and responsibilities and the procedure to follow, the factors to consider, and the options available to the trial court in doing so. The statute likewise governs the process, factors, and options when the trial court is considering whether or not to modify the original allocation.
{¶29} R.C. 3109.04(A) provides that in any proceeding pertinent to the allocation of parental rights and responsibilities, the court shall make the allocation either (1) “primarily to one of the parents, designate that parent as the residential parent and the legal custodian of the child, and divide between the parents the other rights and responsibilities for the care of the children, including, but not limited to, the responsibility to provide support for the children and the right of the parent who is not the residential parent to have continuing contact with the children,” R.C. 3109.04(A)(1); or (2) “to both parents and issue a shared parenting order requiring the parents to share all or some of the aspects of the physical and legal care of the children in accordance with the approved plan for shared parenting.” R.C. 3109.04(A)(2). The first circumstance is more common, where the original decree designates one parent as the residential parent, with the other parent’s rights to companionship and care for the child(ren) governed by a visitation plan. In the second circumstance, which is at *712 issue here, the original decree designates both parents[1] as residential parent, with companionship and care for the child(ren) governed by a shared-parenting plan.
{¶ 80} When allocating parental rights and responsibilities “in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children.” R.C. 3109.04(B)(1). The best-interest factors listed in R.C. 3109.04(F)(1)(a) through (j) are to be considered in either “an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities.” In addition to these ten factors, when a trial court is considering whether shared parenting is in the best interest of the children), five additional factors must be considered. R.C. 3109.04(F)(2). If either/both parents files a motion “requesting the court to grant both parents shared parental rights and responsibilities” pursuant to R.C. 3109.04(G), the procedure to be followed by the trial court is contained in subpart (D). If shared parenting is approved, the plan “shall be incorporated into a final shared parenting decree granting the parents the shared parenting of the children.” (Emphasis added.) R.C. 3109.04(D)(1)(d).
{¶ 31} Such is the process for an original allocation of parental rights and responsibilities, which is journalized in a decree of divorce, dissolution, etc., and incorporates either a visitation plan or a shared-parenting plan. Which type of plan is adopted by the trial court is driven by how it allocated parental rights and responsibilities in its decree, to one or both parents. Further, the above statutory language also guides the modification of the original decree’s allocation of parental rights and responsibilities.
{¶ 32} When either or both parents seek to modify the designation of the residential parent in a prior decree, R.C. 3109.04(E)(1) is the only mechanism to do so. Fisher, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, at ¶ 21. This subpart of the statute, quoted by the majority above at ¶ 7-10, sets the burden of proof that the moving party must meet and the standard the trial court must apply, in order to modify what is colloquially referred to as a prior custody order. But as noted in Fisher, key terms for analytical purposes are not defined by the statute: “parental rights and responsibilities,” “custody and control,” “residential parent,” and “legal custodian.” Id. at ¶ 22-23. The court synthesized these terms by holding that “parental rights and responsibilities” is the right to ultimate legal and physical control of a child, and these rights reside in the party *713 or parties whom the trial court designates as residential parent and legal custodian. (Emphasis added.) Id.
{¶ 33} Based upon this rationale and language from subpart (A)(2) and subpart (L)(6),[2] Fisher concluded that a shared-parenting order allocates parental rights and responsibilities; and in the absence of a specific designation or the context of the decree indicating otherwise, “each parent is a residential parent and legal custodian of the child[.]” Fisher at ¶ 24-25. “Therefore, R.C. 3109.04(E)(1)(a) controls when a court modifies an order designating the residential parent and legal custodian.” (Emphasis added.) Id. at ¶ 26.
{¶ 34} This brings us to the crux of this appeal and where I dissent from the majority’s analysis. As this court in Surgenavic succinctly and correctly held:
{¶ 35} “Although Appellee requested ‘termination’ of the shared parenting plan, R.C. 3109.04(E)(2)(c) is not applicable in this case. The Ohio Supreme Court, in Fisher v. Hasenjager, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, recently recognized that a shared parenting plan is not the vehicle by which a trial court designates a residential parent or legal custodian. Id., ¶ 31. Because the designation of the residential parent and legal custodian involves the allocation of parental rights and responsibilities, ‘R.C. 3109.04(E)(1)(a) controls when a court modifies an order designating the residential parent and legal custodian.’ Id., ¶ 26.” Surgenavic, 2009-Ohio-1028, 2009 WL 582575, at ¶ 9.
{¶ 36} In both this case and Surgenavic, the original decree provided for a shared-parenting plan, and consistent with R.C. 3109.04(L)(6), both parents were designated as residential parent. In both cases, regardless of the terminology used, one parent sought to modify the decree by seeking to be made the sole residential parent. Thus, in both cases, consistent with the language in R.C. 3109.04(E)(1)(a) and Fisher, the moving party bore the burden of proving that there was a change in circumstances before the trial court could modify the allocation of parental rights and responsibilities. Fisher articulated the policy and separation-of-powers reasons for requiring this heightened scrutiny by the trial court, and this court in Surgenavic echoed identical policy reasons:
{¶ 37} “The requirement that a parent seeking modification of a prior decree allocating parental rights and responsibilities show a change of circumstances is *714 purposeful: ‘ “The clear intent of [R.C. 3109.04(E)(1)(a) ] is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the child a ‘better’ environment. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment.” ’ Davis v. Flickinger (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159, quoting Wyss v. Wyss (1982), 3 Ohio App.3d 412, 416, 3 OBR 479, 445 N.E.2d 1153.
{¶ 38} “Further, ‘[t]he General Assembly is the policy-making body in our state and has restricted the exercise of judicial authority with respect to modification of a prior decree allocating parental rights and responsibilities. This legislation comports with our rationale regarding stability in the lives of children as a desirable component of their emotional and physical development.’ In re Brayden James, 113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, at ¶ 28. We note that another statute that addresses orders granting legal custody of a child sets forth the same standard for a modification. R.C. 2151.42(B) also requires a court to find that a ‘change has occurred in the circumstances of the child or the person who was granted legal custody’ and that modification is in the best interest of the child before modifying an order granting legal custody. See In re Brayden James at ¶ 26.” Fisher, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, at ¶ 34-35. See also Surgenavic, 2009-Ohio-1028, 2009 WL 582575, at ¶ 14, citing Wyss.
{¶ 39} The question remains regarding how are R.C. 3109.04(E)(2)(a) through (d), particularly subparts (c) and (d), are read in pari materia with subpart (E)(1), and the entire statute for that matter.
{¶ 40} The trial court recognized, as do I, that Fisher did not analyze R.C. 3109.04(E)(2)(c). However, the overarching rationale of Fisher is that because a shared-parenting decree allocates parental rights and responsibilities to both parents, R.C. 3109.04(E)(1)(a) mandates a showing of a change in circumstances when contemplating a modification in that situation, just as in the situation where the original decree that involves a visitation plan, and not a shared parenting plan, makes the allocation to one parent. That the majority in Fisher did not discuss (E)(2)(c), and that the dissent did not discuss how to read that section in pari materia with (E)(1)(a), obviously has led to multiple, conflicting interpretations of that subpart within and between the districts. However, this omission cannot be construed to mean that despite the articulated legislative policy to protect children from parental tug-of-wars, recognized by the Ohio Supreme Court and this district, such custody disputes would be permitted to occur in the *715 limited subset of decrees that originally designated both parents as residential parent and included a shared-parenting plan.[3]
{¶ 41} In Fisher, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, subsequent to a decree allocating parental rights and responsibilities equally and incorporating a shared-parenting plan, both parents moved to be named sole residential parent. The trial court terminated the shared-parenting plan, as it was in the best interest of the child, and upon consideration of the R.C. 3109.04(F)(1)(a) through (j) factors named Hasenjager the sole residential parent. The appellate court affirmed, concluding first that neither R.C. 3109.04(E)(1)(a), (E)(2)(a), nor (E)(2)(c) applied. And while acknowledging that the trial court characterized it’s order as terminating the shared-parenting plan, the appellate court nonetheless held that the legislature’s use of the word “term” in (E)(2)(b) allowed the trial court to modify all provisions in a shared-parenting plan, including the allocation of parental rights and responsibilities. Fisher at ¶ 6-9.
{¶ 42} The certified question in Fisher framed the issue as follows: “ ‘Is a change in the designation of residential parent and legal custodian of children a “term” of a court approved shared parenting decree, allowing the designation to be modified solely on a finding that the modification is in the best interest of the children pursuant to R.C. 3109.04(E)(2)(b) and without a determination that a “change in circumstances” has occurred pursuant to R.C. 3109.04(E)(1)(a)?’ The answer to this question is ‘no.’ ” Fisher at ¶ 1.
{¶ 43} Fisher explained its answer, holding: “While the designation of residential parent and legal custodian can be modified under R.C. 3109.04(E)(1)(a), that designation cannot be modified under R.C. 3109.04(E)(2)(b), which allows only for the modification of the terms of a shared-parenting plan.” Fisher, 116 Ohio St.3d *716 53, 2007-Ohio-5589, 876 N.E.2d 546, at ¶27. The court then discussed the significance of the distinction in the statute between a plan and a decree or order.
{¶ 44} “An order or decree is used by a court to grant parental rights and responsibilities to a parent or parents and to designate the parent or parents as residential parent and legal custodian.
{¶ 45} “However, a plan includes provisions relevant to the care of a child, such as the child’s living arrangements, medical care, and school placement. R.C. 3109.04(G). A plan details the implementation of the court’s shared-parenting order. For example, a shared-parenting plan must list the holidays on which each parent is responsible for the child and include the amount a parent owes for child support.
{¶ 46} “A plan is not used by a court to designate the residential parent or legal custodian; that designation is made by the court in an order or decree.” Fisher, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 29-31.
{¶ 47} Based upon this analysis and its holding, the Supreme Court reversed the judgment of the court of appeals because it had modified the decree designating the residential parent using the incorrect standard, specifically the plan modification portion of the statute, (E)(2)(b), rather than the decree modification portion of the statute, (E)(1)(a). Fisher further noted that the two subparts of the statute had “significantly different standards for modifications, and as a matter of statutory construction, to construe these two sections to apply to the same situation, specifically modification of the allocation of parental rights and responsibilities, would create inconsistency in the statute.” Id. at ¶ 32.
{¶ 48} Turning back to the language of the statute, it bears repeating that R.C. 3109.04(E)(1)(a) provides that the trial court shall not modify a prior decree allocating parental rights and responsibilities unless a change has occurred in the circumstances of the child “or either of the parents subject to a shared-parenting decree.” (Emphasis added.) Id. (E)(2) then turns to the modification of shared-parenting plans, with the preliminary caveat: “In addition to a modification authorized under division (E)(1) of this section.” (Emphasis added.) R.C. 3109.04(E)(2). It then describes in subparts (a) and (b) the procedure to follow when the plan is modified pursuant to motion by either/both parents or the court, which do not apply here. The final subpart, (c), discusses termination of the plan. The penultimate issue of this appeal is how to read (E)(2)(c) in pari materia with (E)(1)(a), without creating an inconsistency within R.C.3109.04 as a whole.
{¶ 49} Because a shared-parenting decree designates which parent or parents will be the residential parent, whereas a shared-parenting plan addresses, for example, the visitation each residential parent has, the standard for modifying the *717 plan is lower than that for modifying the decree. Fisher reasoned that “the factors contained in a shared-parenting plan are not as critical to the life of a child as the designation of the child’s residential parent and legal custodian. The individual or individuals designated the residential parent and legal custodian of a child will have far greater influence over the child’s life than decisions as to which school the child will attend or the physical location of the child during holidays. Further, factors such as the physical location of a child during a particular weekend or holiday or provisions of a child’s medical care are more likely to require change over time than the status of the child’s residential parent and legal custodian.” Fisher, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, at ¶ 36.
{¶ 50} The trial court here echoed these concerns:
{¶ 51} “[Termination of a shared-parenting decree necessarily entails that there is going to be a change in the residential parent of the child. Therefore, since that designation is being modified, it is only logical to apply the same standard that R.C. 3109.04(E)(1)(a) mandates. In addition, termination of shared-parenting decrees altogether is harsher than modifications to a shared-parenting plan. Thus, it is also logical to apply a stricter burden of proof for terminations, such as R.C. 3109.04(E)(1)(a) does with first finding a change in circumstance.”
{¶ 52} I agree with the rationale of the majority in Fisher and the trial court to require inclusion of the change-in-circumstance standard when determining whether or not to terminate a shared-parenting decree and plan. It is logical to not require a showing of a change in circumstances when modifying the shared-parenting plan. But given the significance of who is designated the residential parent, and the further significance of avoiding a constant back and forth over whether a parent or both parents will be the residential parent, it is logical and statutorily consistent to require a showing of a change in circumstances pursuant to R.C. 3109.04(E)(1)(a) before the trial court determines that it is in the best interest of the child to terminate the shared parenting plan pursuant to (E)(2)(c). In other words, termination of the plan pursuant to (E)(2)(c) presupposes that a change of circumstances has been found by the trial court.
{¶ 53} This is also consistent when considering (E)(2)(d), which provides that in the event the shared-parenting plan is terminated, modification of the decree is made as if no prior determination has been made. This is to reconcile the situation where both parents are the residential parent with the presumption in (E)(1)(a) that when applying the modification standards, “the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree.” Because Fisher held that in a shared-parenting decree, both parents are deemed to be the residential parent, (E)(2)(d) puts both parents on *718 equal footing out of necessity; there isn’t a sole residential parent to measure the (E)(1)(a) presumption against when considering the best interest of the children). Thus, (E)(2)(d) directs that the best-interests consideration be made by applying the factors contained in R.C. 3109.04(F) within the context of (A), (B), and (C), discussed above, which delineate the procedures for designating the residential parent.
{¶ 54} As noted above, the cumbersome nature of the language in R.C. 3109.04 is readily apparent, given the varying interpretations between and within appellate districts. Further, this is apparent from a close reading of the cases discussed by the majority, giving them less persuasive value regardless of how they resolve the applicability of (E)(1)(a). For example, I agree with the majority that we can find guidance on this issue from Posey or Sims. While Posey extensively quotes Fisher and holds that where the designation of the residential parent is being modified, a change of circumstance must be shown and then noted that the trial court failed to make that determination, it still affirmed the trial court’s modification of the residential-parent designation, Posey, 2008-Ohio-536, 2008 WL 352462, at ¶ 12. And Sims notes only that the magistrate in that case relied on Fisher, but then misstates the holding. Sims, 2008-Ohio-6442, 2008 WL 5159899, at ¶ 5.
{¶ 55} But Beismann, Rogers, and Poshe likewise lack persuasive value because those cases also misstate the holding in Fisher (“a mere change in the designation of the residential parent and legal custodian did not constitute a termination of the shared parenting plan, but rather only a modification of the plan.”) Beismann, 2008-Ohio-984, 2008 WL 615502, at ¶ 10, Rogers, 2008-Ohio-1790, 2008 WL 1700440, at ¶ 10, and Poshe, 2011-Ohio-1165, at ¶ 18. Fisher held that the designation of the residential parent was made in a decree not a plan, thus the designation can only by modified in the decree via (E)(1)(a), it cannot be a term of a plan and cannot be modified in the plan via (E)(2)(b). Fisher at ¶ 29, 31. Moreover, the Supreme Court did not characterize modification as a “mere” change; it held that the designation of the residential parent was “critical to the life of a child” because that person “will have far greater influence over the child’s life.” Id. at ¶ 36. Finally, Clybum did not reach the merits of the issue; it dismissed the appeal based upon a lack of jurisdiction because the trial court’s entry was void for vagueness, Clyburn, 2010-Ohio-4508, 2010 WL 3722260, at ¶ 10-13, fn. 1:
{¶ 56} “We recognize of course that terminating a shared parenting plan is a very different proposition than terminating a shared parenting decree. See Fisher v. Hasenjager, 116 Ohio St.3d 53, 876 N.E.2d 546, 2007-Ohio-5589, at ¶ 29 (‘Within the custody statute, a “plan” is statutorily different from a “decree” or an “order.” ’). However, we are uncertain that the trial court intended to vacate *719 the plan but sua sponte modify the decree. The companionship schedule attached to the findings of fact and conclusions of law does not appear to satisfy the requirements of a shared parenting plan. See R.C. 3109.04(G) (‘A plan for shared parenting shall include provisions covering all factors that are relevant to the care of the children, including, but not limited to, provisions covering factors such as physical living arrangements, child support obligations, provision for the children’s medical and dental care, school placement, and the parent with which the children will be physically located during legal holidays, school holidays, and other days of special importance.’) Supposing that a trial court may sua sponte modify a shared parenting decree under R.C. 3109.04, we are uncertain that this is what the trial court intended. No Ohio court we are aware of has considered this issue, but R.C. 3109.04 does not expressly give the trial court the authority to sua sponte modify the decree.” Id. at ¶ 10.
{¶ 57} Conversely, Surgenavic, 2009-Ohio-1028, 2009 WL 582575, as discussed above, and In re Illig, 2009-Ohio-916, 2009 WL 500600, are persuasive, as they both succinctly and correctly cite Fisher: “[W]hen a court is seeking to modify the designation of a residential parent, it must apply R.C. 3109.04(E)(1)(a) and find a change in circumstances prior to modifying the shared parenting plan. However, if the court is only seeking to change the method of implementation of a shared parenting plan, by changing its terms, it may apply R.C. 3109.04(E)(2)(b) and look only to what is in the best interest of the child. Fisher, supra.” Illig at ¶ 15. Both cases involve the same circumstance as this case; regardless of the terms used by the parties, the original decree designated both parents as residential parent, and a subsequent modification designated only one parent as residential parent, terminated the shared-parenting plan, and adopted a visitation plan.
{¶ 58} In conclusion, when an original decree designates that either one parent is a residential parent or both parents are a residential parent, in either circumstance, R.C. 3109.04(E)(1)(a) requires that the trial court first find that a change in circumstances has occurred. In the circumstance where the residential parent is designated in a prior decree that is not a shared-parenting decree, the trial court must secondly find that the change is in the best interest of the children) and (E)(1)(a)®,(ii) or (in) applies, ending the trial court’s analysis. But in the circumstance where the residential parent is designated in a prior shared-parenting decree, the trial court must secondly determine whether terminating the shared-parenting plan is in the best interest of the child pursuant to (E)(2)(c), and then thirdly, pursuant to (E)(2)(d), issue a modified decree allocating parental rights and responsibilities pursuant to the best interest of the children). This conclusion is consistent with the statutory language and purpose of R.C. 3109.04 as a whole, as well as the Supreme Court’s decision in Fisher and our decision in *720 Surgenavie. For these reasons, I would affirm the decision of the trial court, and certify a conflict to the Supreme Court.

. This occurs in most cases; however, courts have named only one parent as residential parent in the original decree that incorporates a shared-parenting plan—for example In re J.L.R., 4th Dist. No. 08CA17, 2009-Ohio-5812, 2009 WL 3634403. This factual distinction does not affect the analysis and is provided for factual accuracy.

. Fisher cited the former numeration of this subpart section, which was (K)(6). The subpart in both versions of the statute states: " ‘Unless the context clearly requires otherwise and except as otherwise provided in the order, if an order is issued by a court pursuant to this section and the order provides for shared parenting of a child, each parent, regardless of where the child is physically located or with whom the child is residing at a particular point in time, as specified in the order, is the "residential parent,” the "residential parent and legal custodian,” or the "custodial parent” of the child.’ ”

. Where the inverse to this case occurs, namely, the original decree allocated parental rights and responsibilities to one parent and subsequently shared-parenting is sought, R.C. 3109.04(E)(1)(b) provides: "One or both of the parents under a prior decree allocating parental rights and responsibilities for the care of children that is not a shared parenting decree may file a motion requesting that the prior decree be modified to give both parents shared rights and responsibilities for the care of the children. The motion shall include both a request for modification of the prior decree and a request for a shared parenting order that complies with division (G) of this section. Upon the filing of the motion, if the court determines that a modification of the prior decree is authorized under division (E)(1)(a) of this section, the court may modify the prior decree to grant a shared parenting order, provided that the court shall not modify the prior decree to grant a shared parenting order unless the court complies with divisions (A) and (D)(1) of this section and, in accordance with those divisions, approves the submitted shared parenting plan and determines that shared parenting would be in the best interest of the children." (Emphasis added.) Because this subpart expressly includes the change-in-circumstances standard, it reinforces the contention that this statute is too cumbersome because it includes too many circumstances in one statute, which leads to conflicting interpretations to resolve gaps in the statutory language.