[Cite as *Harrison v. Harrison*, 2019-Ohio-2835.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| KESORN HARRISON (nka WRIGHT) | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 2018-CA-105 |
| | : | |
| v. | : | Trial Court Case No. 2011-DR-442 |
| | : | |
| KEVIN HARRISON, et al. | : | (Domestic Relations Appeal) |
| | : | |
| Defendants-Appellees | : | |
| | : | |

· · · · · · · · · · ·

# O P I N I O N

Rendered on the 12th day of July, 2019.

· · · · · · · · · ·

REBECCA BARTHELEMY-SMITH, Atty. Reg. No. 0003474, 7821 North Dixie Drive, Dayton, Ohio 45414
      Attorney for Plaintiff-Appellant

KEVIN HARRISON, 6771 West National Road, New Carlisle, Ohio 45344
      Defendant-Appellant, Pro Se

· · · · · · · · · · · · ·

TUCKER, J.

**{¶ 1}** Plaintiff-appellant Kesorn Wright, formerly known as Kesorn Harrison, appeals from a judgment of the Clark County Court of Common Pleas, Domestic Relations Division, granting the motion of her former husband, Kevin Harrison, to terminate the shared parenting arrangement concerning their minor child. The court also designated Kevin Harrison as the residential parent and legal custodian. Because we cannot say that the court abused its discretion, the judgment will be affirmed.

## I.     Facts and Procedural Background

**{¶ 2}** Wright and Harrison were married in 2010 and have one minor child who was born in September 2011. The parties divorced in 2012, and Wright was designated as the residential parent and legal custodian of the child. In 2015, the parties entered into an agreed shared parenting plan. The shared parenting plan named Wright as the residential parent for school purposes only; the parents shared time with the child "on an approximate equal basis." In 2017, Harrison filed a motion to terminate the shared parenting plan and to designate him as residential parent and legal custodian. Wright sought to maintain shared parenting or, in the alternative, to be designated as the residential parent and legal custodian if the shared parenting plan were terminated.

**{¶ 3}** Hearings were conducted over the course of four days in January, February, April and September 2018. Following the hearings, the trial court terminated the shared parenting plan and designated Harrison as the legal custodian and residential parent of the child. Wright appeals.

## II.     Analysis

{¶ 4} Wright's sole assignment of error states as follows:

THE LOWER COURT ERRED IN TE[R]MINATING THE SHARED PARENTING.

{¶ 5} Wright claims that the trial court's judgment must be reversed because the court did not consider the necessary statutory factors for determining whether to terminate the shared parenting plan.

{¶ 6} R.C. 3109.04(E)(2)(c) permits a court to terminate a shared parenting decree. "A change in circumstances is not required before terminating shared parenting." *Curtis v. Curtis*, 2d Dist. Montgomery No. 25211, 2012-Ohio-4855, ¶ 7, citing *Brennaman v. Huber*, 2d Dist. Greene No. 97 CA 53, 1998 WL 127081, * 2 (Mar. 20, 1998). R.C. 3109.04(E)(2)(c) requires only that the court find that terminating the shared parenting decree is in the child's best interest. *Toler v. Toler*, 2d Dist. Clark No. 10-CA-69, 2011-Ohio-3510, ¶ 11, quoting *Beismann v. Beismann*, 2d Dist. Montgomery No. 22323, 2008-Ohio-984, ¶ 8.

{¶ 7} When determining whether shared parenting is in the best interest of the children, R.C. 3109.04(F)(2) states that "the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, * * * and all of the following factors:

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other

domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

{¶ 8} It is clear from reading the trial court's decision that it did consider the relevant statutory factors. Specifically, the trial court found that, since the filing of the shared parenting plan, the parties had become unable to communicate and cooperate with each other concerning decisions made with respect to the child. The court further found that the parties were not able to encourage the sharing of love and contact between the child and the other parent. The court found that there was no evidence of any history or potential for abuse, domestic violence or parental kidnapping. The trial court also found that the parties' residences were close enough to each other that there was no impediment to the practical considerations of shared parenting. Finally, contrary to Wright's claim that the trial court ignored the testimony and report of the guardian ad litem (GAL) recommending that the shared parenting plan remain in place, we note that the court specifically referred to the report of the GAL in its decision.[1]

{¶ 9} The inability of the parents to effectively cooperate or communicate constitutes sufficient grounds for terminating a shared parenting decree. *Massengill v. Massengill*, 2d Dist. Montgomery No. 18610, 2001 WL 283001, *5 (Mar. 23, 2001); *Duricy v. Duricy*, 11th Dist. Trumbull Nos. 2009-T-0078, 2009-T-0118, 2010-Ohio-3556, ¶ 43.

---

[1] We note that, while a trial court must consider a GAL's recommendation regarding custody, it is not required to follow that recommendation. *See In re P.P.*, 2d Dist. Montgomery No. 19582, 2003-Ohio-1051, ¶ 24.

*See also A.S. v. D.G.*, 12th Dist. Clinton No. 2006-05-017, 2007-Ohio-1556, ¶ 52-54 (affirming the trial court's decision to terminate a shared parenting decree because the parents could no longer cooperate and communicate with each other regarding the child); *Milner v. Milner*, 10th Dist. Franklin No. 99AP-13, 1999 WL 1139965, *4 (Dec. 14, 1999).

{¶ 10} Although she assigned the blame to Harrison, Wright did not dispute that she and Harrison had significant difficulties in communicating and cooperating.   The trial court made this factual finding, and based upon it, concluded that termination of the shared parenting decree was in the child's best interest.   The record supports a finding that there has been a breakdown in communications regarding the child's medications and medical appointments, both of which were crucial because the child has multiple medical conditions which require ongoing medication and treatment.

{¶ 11} A trial court enjoys broad discretion when determining the appropriate allocation of parental rights and responsibilities.   *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988).   "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect."   *Id.*   "The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. * * *"   *Id.*   Therefore, absent an abuse of that discretion, a reviewing court will affirm the custody determination of the trial court.   Abuse of discretion is a term used to indicate that a trial court's decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 12} Based upon our review of the record, we cannot say that the trial court abused its discretion in terminating the shared parenting plan.

{¶ 13} Although not expressly stated or argued, we also find that the trial court did not abuse its discretion by designating Harrison as the residential parent and legal custodian. The trial court found that the child was bonded to both parents and both parents had appropriate homes. However, the trial court found that Wright had not provided a stable environment for the child. We note that, while the GAL did make a recommendation to retain shared parenting, the GAL also noted that Wright lacked stability in her life. Indeed, the record demonstrates that Wright had moved at least five times between the filing of the shared parenting plan in June 2015 and September 2018, and that Wright had been involved with a man who was known as a drug dealer and who was later arrested on drug charges. There was evidence that the man had been living with Wright and that her parents forced her to vacate the premises, which her parents owned, because they did not want the man in the home. Wright married her current husband in August 2017 and had lived in two different homes with him. The second home was in Rosewood, Ohio, and this move occurred in early 2018.

{¶ 14} The evidence showed that the child had difficulty in school and that Harrison tended to the child's educational needs by working with the child to improve his reading and math skills. Wright maintained that she also worked with the child to improve his school performance. There was also evidence that the child performed better on spelling tests when he had been in the father's home the night before the tests. The record also shows that, when the child was in Wright's care, he was absent from school on 25 occasions and was tardy, without an excuse, on 14 days. The child had to repeat first grade.

{¶ 15} The trial court specifically found Harrison's testimony more credible than

Wright's testimony and concluded that Harrison was more reliable and better suited to be the child's custodial parent.   We, on this record, can find no abuse of discretion.

{¶ 16} Accordingly, Wright's sole assignment of error is overruled.


### III.    Conclusion

{¶ 17} Wright's assignment of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .


WELBAUM, P.J. and FROELICH, J., concur.



Copies sent to:

Rebecca Barthelemy-Smith
Kevin Harrison
Stacy & Andrew Campbell
Hon. Thomas J. Capper